**RECORD NO. 14-1017**

### IN THE

# United States Court of Appeals

### FOR THE FOURTH CIRCUIT

---

## STEVE BASS; TERRY H. BASS,

*Plaintiffs - Appellants,*

v.

## TOM VILSACK,

### SECRETARY UNITED STATES DEPARTMENT OF AGRICULTURE,

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT WILMINGTON

---

**OPENING BRIEF OF APPELLANTS
STEVE BASS and TERRY H. BASS**

---

Thomas A. Lawler
LAWLER & SWANSON
601 Coates Street
P.O. Box 280
Parkersburg, IA 50665
(319) 346-2650 Telephone
lawlerandswanson@iabar.org

*Counsel for Appellants*

February 18, 2014

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No.  14-1017        Caption:  Steve Bass; Terry H. Bass v. Tom Vilsack

Pursuant to FRAP 26.1 and Local Rule 26.1,

Steve Bass
(name of party/amicus)


who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?                               ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                        ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?     ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: <u>s/Thomas A. Lawler</u>          Date:     <u>01/15/2014</u>

Counsel for: <u>Steve Bass</u>

## CERTIFICATE OF SERVICE
***************************

I certify that on     <u>01/15/2014</u>     the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

<u>s/ Thomas A. Lawler</u>                    <u>01/15/2014</u>
         (signature)                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1017__    Caption: __Steve Bass; Terry H. Bass v. Tom Vilsack__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Terry H. Bass__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: s/Thomas A. Lawler                    Date:    01/15/2014

Counsel for: Terry H. Bass

## CERTIFICATE OF SERVICE
**************************

I certify that on ____01/15/2014____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

s/ Thomas A. Lawler                              01/15/2014
        (signature)                                 (date)

# I. TABLE OF CONTENTS

I.   TABLE OF CONTENTS ............................................................ i

II.  TABLE OF AUTHORITIES ...................................................... iii

III. JURISDICTIONAL STATEMENT ................................................1

IV.  STATEMENT OF ISSUES .........................................................2

     A.   When the United States Department of Agriculture made wetland determinations in 2005, 2008, and 2010 for Basses did that invalidate its wetland determination made in 1994?.............................2

     B.    When the United States Department of Agriculture determined that Basses had converted a wetland in violation of 16 U.S.C. §3821 (a) was it required to determine whether the conversion had only a minimal effect on the wetland functions and values in the area or only on Basses' land?.........................................................2

V. STATEMENT OF THE CASE ...........................................................2

VI. SUMMARY OF BASSES' ARGUMENT.......................................13

VII. STANDARD OF REVIEW...........................................................15

VIII. ARGUMENT ...............................................................................17

     A.   When the United States Department of Agriculture made wetland determinations in 2005, 2008, and 2010 for Basses did that invalidate its wetland determination made in 1994?.........................17

     B.   When the United States Department of Agriculture determined that Basses had converted a wetland in violation of *16 U.S.C. §3821 (a)* was it required to determine whether the conversion had only a minimal effect on the wetland functions and values in the area or only on Basses' land?.......................................................23

IX. CONCLUSION................................................................................30

X.   CERTIFICATE OF COMPLIANCE ....................................................................31

XI.   CERTIFICATE OF FILING AND SERVICE .................................................32

XII.   ADDENDUM ...................................................................................................33

# I. TABLE OF AUTHORITIES

## CASES

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
  467 U.S. 837, 842–45 (1984) ...................................................................16

*Helena Rubinstein, Inc. v. Bau*,
  *433 F.2d 1021*, 1023 (9 Cir. 1970) ........................................................28

*Holly Hill Farm Corporation v. United States of America*,
  447 F.3d 258 (4th Cir. 2006) ..................................... 17, 27, 28, 29

*In re Peanut Crop Insurance Litigation*,
  524 F.3rd 458 (4th Cir. 2008) ..............................................................16

*INS v. Cardoza-Fonseca*,
  480 U.S. 421, 446–48 (1987) ................................................................28

*Maynard v. General Electric Company*,
  486 F.2d 538 (4th Cir. 1973) ................................................................28

*Muth v. United States*,
  1 F. 3d 246 (4th Cir. 1993) ...................................................................27

*Olenhouse v. Commodity Credit Corp.*,
  42 F.3d 1560 (10th Cir. 1994) ..............................................................16

*Semaan v. Mumford*,
  *118 U.S.App.D.C. 282, 335 F.2d 704*, 706, n. 7 (1964) ...............28

*Shea v. Vialpando*,
  416 U.S. 251, 262, n.11 (1974) .............................................................16

*Steward v. Hall*,
  770 F.2d 1267 (4th Cir. 1985) ..............................................................27

*Tyson v. United States Dep't of Agriculture*,
  360 Fed. Appx. 451, No. 09–1037 (4th Cir. 2010) .........................1

## STATUTES

5 U.S.C. §702 ...........................................................................................1

5 U.S.C. § 706 ........................................................................................16

5 U.S.C. §706(2)(A),(C),(D) ............................................................ 16, 17

6 U.S.C. §6997 .......................................................................................26

6 U.S.C. § 6999 ......................................................................................26

7 U.S.C. §3822(f) .....................................................................................7

7 U.S.C. §6999 .........................................................................................1

16 U.S.C. §3801(a)(7)(A) .......................................................................18

16 U.S.C. § 3801(a)(27) ........................................................... 18

16 U.S.C. §3821 (a) ............................................................. 2, 23

16 U.S.C. § 3821 (b) .............................................................. 17

16 U.S.C. § 3821(c) ............................................................... 17

16 U.S.C. §3822(a)(1) ............................................................ 18

16 U.S.C. §3822(a)(4) ................................................... 14, 18, 22

16 U.S.C. §3822(a)(6) ....................................................... 19, 21

16 U.S.C. §3822(b)(1)(A) ....................................................... 17

16 U.S.C. §3822(f)(1) .................................................... 14, 15, 24

28 U.S.C. § 41 ...................................................................... 1

28 U.S.C. §1291 .................................................................... 1

28 U.S.C. §1294 .................................................................... 1

28 U.S.C. §1331 .................................................................... 3

28 U.S.C. §1337(a) ................................................................. 3

28 U.S.C. §1391(e) ................................................................. 1

28 U.S.C. §§ 2201–2202 ........................................................... 1

# REGULATIONS

7 C.F.R. §11 .................................................................... 4, 8

7 C.F.R. §11.1 ..................................................................... 8

7 C.F.R. §11.8(f) .......................................................... 8, 9, 10

7 C.F.R. §11.9 ..................................................................... 8

7 C.F.R. §11.10(c) ................................................................ 29

7 C.F.R. §11.13 ................................................................... 11

7 C.F.R. §12.30(a)(3) ............................................................ 18

7 C.F.R. §12.30(c)(4) ..................................................... 19, 20, 21

7 C.F.R. §12.30(c)(6) ............................................................ 22

7 C.F.R. §12.5(b)(1)(v) .......................................................... 14

7 C.F.R. §12.5(b)(v) ............................................................. 25

7 C.F.R. §614.200 ................................................................. 8

7 C.F.R. §614.201(a) ............................................................. 4

# RULES

Fed. R. App. Proc. 4(a)(1)(B) ..................................................... 1

# III. JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of North Carolina, Southern Division had jurisdiction over the subject matter of this action by virtue of *28 U.S.C. §1331 and §1337(a)*. The relief requested is authorized by *28 U.S.C. §§ 2201–2202*. Sovereign immunity is waived by *5 U.S.C. §702* and *7 U.S.C. §6999*. The 4th Circuit recognizes *5 U.S.C. §702* as the correct vehicle for judicial review of USDA action. *See Tyson v. United States Dep't of Agriculture*, 360 Fed. Appx. 451, No. 09–1037 (4th Cir. 2010). Venue was proper in that district court, pursuant to *28 U.S.C. §1391(e)*, because it is the district in which a substantial part of the events giving rise to the claim occurred, all of the property that is the subject of the action is situated, and where the Plaintiffs are residents.   United  States Department of Agriculture's action under review before the district court is final and subject to District Court review.  7 U.S.C.  §6999.

The United States Court of Appeals for the Fourth Circuit has jurisdiction over this appeal from the final decision made by the United States District Court for the Eastern District of North Carolina by virtue of *28 U.S.C. §§41, 1291,and 1294* because the Fourth Circuit embraces district courts located in North Carolina.

The district court's order that is appealed was entered November 8, 2013. Because the United States is a party the time for appeal, as established in Federal Rules of Appellate Procedure, Rule 4(a)(1)(B), is 60 days after the order appealed

from is entered. Notice of Appeal was filed January 7, 2014, which is within the 60 day period in which to appeal.

This is an appeal from a final order of the United States District Court for the Eastern District of North Carolina, Southern Division disposing of all parties' claims.

## IV. STATEMENT OF ISSUES

A. When the United States Department of Agriculture made determinations in 2005, 2008, and 2010 for Basses did that invalidate its wetland determination made in 1994?

B. When the United States Department of Agriculture determined that Basses had converted a wetland in violation of 16 U.S.C. §3821 (a) was it required to determine whether the conversion had only a minimal effect on the wetland functions and values in the area or only on Basses' land?

## V. STATEMENT OF THE CASE

Steve Bass and Terry H. Bass are residents of North Carolina. They own real estate in Sampson County, North Carolina, referred to by the USDA as Farm 3188, Tract 8355. Terry H. Bass (Steve Bass's mother), owned a life estate interest in the tract, and Steve Bass owns the remainder interest. *J.A. 583–585.* Terry H. Bass died in October of 2013 leaving Steve Bass,   as remainderman, the only owner of the real estate.  The real estate was  previously owned by Terry's  husband and Steve's father, Joe Bass. In 1994, Joe Bass requested a wetland certification with

his local Farm Services Agency (FSA), an agency of the United States Department of Agriculture, in Sampson County, North Carolina. *J.A. 550.* FSA forwarded the request to the Natural Resources Conservation Service (NRCS but then called the Soil Conservation Service, SCS), also an agency of the United States Department of Agriculture. NRCS determined that Tract 8355 contained 38 acres of wetland. *J.A. 95-97.* However, in making this determination (1994 Determination), the Agency did not make a field visit. Instead, its determination relied entirely on charts and maps reviewed in its office. *J.A. 97, sec. 27.*

Joe Bass filed a request for a review of the 1994 Determination, stating on the NRCS-CPA-38 form that the purpose for his request was because he wanted to clear about 40 acres of Tract 8355 for farming. *J.A. 103.* In response to this request, John Gagnon from NRCS made an on-site visit to Tract 8355 for the purpose of investigating Tract 8355. *J.A. 113.* Following Mr. Gagnon's visit, the Agency issued a preliminary technical determination, on March 23, 2005, that 28 acres of Tract 8355 met the USDA wetland requirements (2005 Determination). *J.A. 107-109.* This was a change from the 38 acres of wetland in the 1994 Determination. Mr. Bass did not, within 30 days, request a field visit to review the preliminary technical determination nor did he request mediation to attempt to settle concerns with the preliminary technical determination and therefore the preliminary technical determination became a final technical determination on

April 23, 2005. *J.A. 18,  Finding of Facts No. 7*.  The March 23, 2005  letter
notifying Joe Bass of  the  2005 Determination told him that he could appeal the
final technical determination  to the  Farm Service  Agency Sampson County
committee. *J.A. 108*. USDA's regulation requires that the notice of the NRCS's
decision must  inform  the landowner of  the  landowner's right to an informal
hearing before NRCS, mediation, or a hearing before NAD in accordance with
NAD's appeal rules found at *7 C.F.R. part 11*. *7 C.F.R. 614.201(a)*. Because the
letter of March 23, 2005 did not contain the required appeal procedures set out in
the regulation it is not a valid notice of NRCS's final decision.

Joe Bass did not appeal the 2005 Determination and he died in 2005 so his
life estate interest in Tract 8355 terminated leaving a life estate in appellant Terry
H. Bass and the remainder interest in appellant Steve Bass. In April of 2005 the
Army Corps of Engineers provided Joe Bass a preliminary notification that the
Corps may have jurisdiction under the Clean Water Act and recommended that a
consultant be hired to assist Mr. Bass in assessing a response. *J.A. 94.* Basses, in
2006, hired a private consultant, Craig Turner of Land Management Group, to map
the wetlands  on Tract  8355.   *J.A. 551*. Mr. Turner investigated Tract 8355 in
mid-2007 and concluded there were no wetlands on the tract. *J.A. 562*. Because
NRCS had said there were wetlands, he recommended that Basses cut down the
trees to allow him to look for additional evidence of wetlands. Plaintiffs cut the

4

trees down in August and September of 2007, but did not remove the stumps. *J.A. 76-77, trans. 66–67.* Mr. Turner then returned to the site and still could not find wetlands. *J.A. 76-77, trans. 66–67.*

The consultant, Craig Turner, prepared a written report, which he submitted to the Army Corps of Engineers (Corps) as part of a process of getting a decision from the Corps that no wetlands were on Tract 8355 for purposes of the Clean Water Act, which is under Corps jurisdiction. *J.A. 552-575.* Mr. Turner's report concluded there were no wetlands on Tract 8355, *J.A. 562,* and that Tract 8355 could not be classified as a wetland based upon the requirements set forth in the 1987 Army Corps of Engineers Wetland Delineation Manual. In response to Mr. Turner's report and the request to Corps for a wetland determination, Ronnie Smith of the Corps visited Tract 8355 in January of 2008 and concluded that the only water of the United States for purposes of the Clean Water Act on Tract 8355 was in a tributary of Panther Creek located on the south boundary of Tract 8355. *J.A. 575-576.* Because the Corps found no wetlands where the trees had been removed, the area where the conversion action for purposes of USDA's jurisdiction occurred, the Corps determined Basses had not violated the Clean Water Act.

In January of 2008, Basses reported to USDA that they had cleared the trees and stumps from Tract 8355 and wanted to add the acres to their agricultural production base. *J.A. 82, tran. 72, lines 21–25, and J.A. 83, tran. 73, lines 1–6.*

This caused NRCS to review its wetland determination for Tract 8355 again, as a follow-up to both Mr. Turner's and the Corps' reports. *J.A. 85, trans. 83, lines 2–19.* Sam Warren, NRCS's District Conservationist for Sampson County, told Plaintiffs that for purposes of the Food Security Act (USDA jurisdiction) NRCS would accept the Corps' determination made for purposes of the Clean Water Act but needed to verify Mr. Turner's conclusions. *J.A. 86, 576, notes on 1-16-2008, letter from Sam Warren to Plaintiff Steve Bass and his brother, Mark.*

NRCS conducted on-site visits to Tract 8355 on January 31, 2008 and February 1, 2008, *J.A. 92,* and issued a final technical determination, dated February 4, 2008 (2008 Determination), that Tract 8355 contained 14.8 acres of wetlands converted by Basses in 2008 (CW+2008), 30.4 acres of non-wetlands (NW), and 97 acres of wetlands converted prior to December 24, 1985 (PC)[1]. *J.A. 180.* This was a change from the 1994 Determination of 38 acres of wetlands (W) and the 2005 Determination of 28 acres of wetlands (W), 16 acres of non-wetlands (NW), and 97 acres of prior converted wetlands (PC). *Id. at 97-109.* The 1994 Determination was 38 acres of wetland, the 2005 Determination was 28 acres of wetland, and the 2008 Determination was 14.8 acres of wetland that has now been converted, converted in 2008.

---

[1] The 97 acres of wetlands converted prior to December 24, 1985 is from an additional field in Tract 8355 and is separate from the field in dispute in this case.

Because NRCS determined that Basses had converted a wetland, it further considered whether the conversion activity had only a minimal effect on the functional hydrological and biological values of the Basses' wetland on Tract 8355. *J.A. 168-172.* The Agency concluded that because all wetland functions on Tract 8355 were eliminated or substantially reduced, no minimal effect exemption, authorized by 7 U.S.C. § 3822(f), applied. *J.A. 172, bottom.*

NRCS rescinded the 2008 Determination, *J.A. 205-206,* stating that while it had rescinded the 2008 Determination, it was not taking any action to modify the 2005 Determination and that the 2005 Determination remained in force. *J.A. 205-206.* No mention was made of the 1994 Determination. NRCS went on to report to Basses that it would re-evaluate Tract 8355 because of the clearing activities. Based on this re-evaluation, NRCS issued a new wetland determination dated August 17, 2008 (2008 Determination Two). The 2008 Determination Two was that Tract 8355 contained 14.6 acres of CW+2008. This is a slight change from the 2008 Determination of 14.8 acres of CW+2008. No other wetland determinations for the other acres in Tract 8355 were part of the 2008 Determination Two. *J.A. 362.*

The 2008 Determination Two is dated August 17, 2008, but states that the preliminary determination date is August 17, 2009. *J.A. 362.* In a letter dated May 20, 2010, NRCS notified Mark Bass, brother of Appellant Steve Bass and son of

Appellant Terry H. Bass, that a preliminary technical determination dated August 17, 2009,  (the 2008 Determination Two), was rescinded and a new preliminary technical determination had been made, 2010 Determination. *J.A. 365 - 371.* The 2010 Determination was that Tract 8355 contained 13.5 acres of wetland converted in 2008 (CW+2008) and 29.7 acres of non-wetland (NW). *J.A. 373.* This is a reduction from 14.6 acres of CW+2008 in the 2008 Determination Two to 13.5 acres of CW+2008. No other wetland determinations were noted by NRCS. *J.A. 373.* In the 2008 Determination Two and the May 20, 2010 letter, no minimal effect determination was mentioned.  The 2010 Determination became final June 21, 2010. *J.A. 376-377.*

Basses appealed the 2010 Determination to the National Appeals Division of the United States Department of Agriculture (NAD). *J.A. 426.* NAD is the administrative appeal process for USDA when decisions by NRCS are involved. *7 C.F.R. 614.200.* The NAD procedure rules appear at *7 C.F.R. part 11.* The appeal process involves a hearing before a hearing officer. *7 C.F.R. 11.1 Definition of Hearing and of Hearing Officer.*  Following a decision by the hearing officer, which NAD calls an Appeal Determination, either party may ask the Director of NAD to review the Appeal Determination, *7 C.F.R. 11.*9. If no request for review is made the Appeal Determination becomes the final determination of NAD and is reviewable and enforceable by any United States District Court of competent

jurisdiction. *7 C.F.R 11.8(f), 7 C.F.R. 11*.13. A NAD hearing was held and an Appeal Determination issued. *J.A. 15-31*. The determination was as follows:

1) The 1994 Determination was still valid and in effect. *J.A. 26, last sent. of first para.*

2) The Basses could not assert in their appeal of the 2010 Determination that the area drained and cleared of trees was not a wetland prior to the clearing and draining. *J.A. 26, second to last sent. of second para.*

3) Basses' appeal of the 2010 determination was limited to whether a conversion occurred. *J.A. 26, third to last sent. of second para.*

4) Basses had altered Tract 8355 to permit the production of an agricultural commodity, converting the wetland. *J.A. 28, second para.*

5) While not an issue, the Agency proved that Tract 8355 met the definition of a wetland because of rainfall records. *J.A. 28, third para.*

6) The Agency's 1994 Determination, 2005 Determination, and 2008 Determination and the 2008 Determination Two were in error because the pre-1985 draining activities removed wetland criteria for all but 13.5 acres of Tract 8355. *J.A. 29, first para.*

7) The Agency's decision was not erroneous. *J.A. 30, bottom* (DETER-MINATION).

9

No review by the director of NAD was request by either party so the NAD hearing officer's Appeal Determination became the final administrative event. *7 C.F.R 11.8(f)*.

Basses filed a complaint on November 18, 2011 in the United States District Court for the Eastern District of North Carolina, Southern Division, asking for judicial review of USDA's final action. *J.A. 36-46*. They asked for a declaratory judgment that USDA's final administrative action was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; was in excess of statutory jurisdiction, authority, or limitations or short of statutory rights; was without observance of procedures required by law; and was unsupported by substantial evidence for the following reasons:

1) NRCS concluded the 1994 Determination was certified without considering whether it was of sufficient quality to make a determination of ineligibility for program benefits;

2) USDA limited Basses' NAD appeal to only the question of whether a conversion occurred in 2008, not allowing consideration of whether the area alleged to have been converted was a wetland prior to the alleged conversion;

3) NRCS did not review or certify the accuracy of its wetland determination to insure it was accurate when the NAD appeal was requested;

4) Rainfall data was used as the indicator of the wetland criteria of inundation or saturation, which is not an approved method for verifying inundation or saturation;

5) Inundation or saturation within the upper 12 inches of the surface for 12 days instead of 14 days was used by NRCS in making its wetland determination;

6) The decision finding the presence of the wetland criteria of inundation or saturation was not supported by a preponderance of the evidence;

7) NRCS's method of identifying the wetland criteria of hydrophytic vegetation adapted for life in saturated soil conditions was flawed;

8) NRCS did not follow its wetland delineation methodology in making its determination;

9) NRCS did not consider whether the alleged conversion had only a minimal effect on the wetland functions and values in the area; and

10) Basses did offer substantial evidence that the wetland determination was erroneous.

Tom Vilsack, the Secretary USDA, by the United States Attorney's office, filed an appearance, answer, and a motion for summary judgment. Following briefing by the parties, Senior Judge Malcolm J. Howard issued an order dated November 7, 2013 that was entered on November 8, 2013. *J.A. 50-65*. In his order

Judge Howard concluded that at least one valid prior certified wetland determination was in existence when Basses converted Field UN2 on Tract 8355 and, as a result, when Basses requested review of the 2010 Determination the review was limited only to whether a conversion occurred. The Basses, in Judge Howard's opinion, could not reopen the question of whether wetland ever existed on the property prior to the conversion. The court found that there was no clear error in judgment by USDA in relying on the 1994 Determination considering that both the 1994 Determination and the 2005 Determination found wetlands on Tract 8355 and Basses proceeded to convert the area determined to be wetland from its wetland characteristics in complete disregard for both determinations. Judge Howard ruled that the district court did not have jurisdiction to consider Basses' arguments that the correct procedures were not followed in making the determination that Field UN2 on Tract 8355 had wetlands prior to the conversion. Finally the court's order is that Basses never requested a minimal effect determination from NRCS and did not raise this argument during the NAD hearing so had failed to exhaust their administration remedies, depriving the court of subject matter jurisdiction on the minimal effect issue. In summary, Judge Howard found that USDA acted reasonably when it found Basses ineligible for USDA benefits because of the wetland conversion and as a result USDA's final adminis-trative decision was affirmed and the motion for summary judgment was granted.

Basses filed a Notice of Appeal to this court and are asking this court to rule that when NRCS issued a new wetland determination in 2005, two wetland determinations in 2008, and a determination in 2010, that the 1994 Determination was no longer valid and in effect because a review of it had been requested, a review was granted, and new and changed determinations were issued (2005 Determination, 2008 Determination, 2008 Determination Two, and 2010 Determination). As a result, USDA's reliance on the 1994 Determination and the district court's reliance on either the 1994 Determination or the 2005 Determination to establish that Tract 8355 had areas that meet the definition of wetlands for USDA purposes so that Basses appeal of the 2010 Determination was limited to whether a conversion occurred was contrary to the law. They also ask the court to rule that when NRCS concluded that because Basses conversion activity eliminated or substantially reduced the wetland functions on Tract 8355 it violated the law because it did not consider the effect of the conversion activity on the wetland functions and values in the area rather than just on Tract 8355.

## VI. SUMMARY OF BASSES' ARGUMENT

Basses argue that the 1994 Determination was no longer valid and in effect once Joe Bass, the owner of Tract 8355 and so a person affected by the 1994 Determination, requested a new wetland determination in December of 2004,

NRCS did a new determination for Tract 8355 as a result of the request, and the new determination was different from the 1994 Determination, because of *16 U.S.C. §3822(a)(4)*, which provides that a certified wetland determination is valid and in effect until a person affected by the determination requests a review. It is not a matter of equity or fairness but a matter of the statute says what it says and it must be followed by all.

Basses also argue that before NRCS determines that a person is or will be ineligible for USDA benefits because of a purposed or completed conversion, NRCS must consider whether the proposed or completed activity would or does have only a minimal effect on the functional hydrological and biological values of wetlands in the area as required by *16 U.S.C. §3822(f)(1)* and *7 C.F.R. 12.5(b)(1)(v)*. In considering whether to apply the minimal effect exemption NRCS denied the exemption because the conversion activity manipulated more than .33 acres of wetland, the wetland converted had more than three co-dominant tree species, and springs and their contiguous wetland ("Groundwater discharge apparent on gentle slopes."). *J.A. 168-172*. NRCS did not identify the wetland functions or values, *J.A. 172. DESCRIPTION OF WETLAND FUNCTIONS toward the top of form is blank and nowhere is there a statement of the wetland values*. The items that caused NRCS to deny the minimal effect exemption all related only to Tract 8355. There is no consideration of the conversion activity

on the wetland functions or values in the area. To focus just on the wetland functions and values on Tract 8355 violates the statute's requirement that NRCS consider the effect on the area. Area implies a much broader geographic boundary than just the wetland that was or will be converted. If only the wetland converted or to be converted was the geographic boundaries the statute would say the functions and value of the wetland converted or to be converted. This is not what the statute says. The statute refers to all other actions individually and in connection with other similar actions authorized by USDA in the area and refers to wetlands in the area. "The action, individually and in connection with all other similar actions authorized by the Secretary in the area, will have a minimal effect on the functional hydrological and biological value of the wetlands in the area, including the value to waterfowl and wildlife." *16 U.S.C. 3822(f)(1)*. USDA, in denying Basses a minimal effect, have taken an action that is not in accordance with law, is short of satisfying Basses' statutory rights, and does not observe the procedures required by law and therefore should be held unlawful and set aside.

## VII. STANDARD OF REVIEW

The standard of review is that the Court "shall: . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law" or found to be "in excess of statutory jurisdiction, authority or limitations, or short of statutory right." Or "without observance of procedure

15

required by law." *5 U.S.C. § 706(2)(A), (C), (D)*. When reviewing agency actions, findings, and conclusions, questions of law are fully subject to the Court's review. *5 U.S.C. §706*; *INS v. Cardoza-Fonseca,* 480 U.S. 421, 446–48 (1987). A misapplication or misinterpretation of the law requires the Court to set aside the agency's determinations. *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1573–74 (10th Cir. 1994). While the agency's interpretations of the applicable statutes may be entitled to deference, the issues of whether and to what extent deference is due are for the Court to decide and deference is not appropriate when "Congress has directly spoken on the precise question at issue. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–45 (1984). Deference is also not appropriate when the statutory or regulatory language is clear. *Shea v. Vialpando,* 416 U.S. 251, 262, n.11 (1974). The district court's ruling granted a summary judgment request by USDA which is reviewed de novo viewing the facts and inferences drawn therefrom in the light most favorable to the non-moving party. *In re Peanut Crop Insurance Litigation,* 524 F.3[rd] 458, 470 (4th Cir. 2008). So the standard of review for this court is *de nova* without deference and is to hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law" or found to be "in excess of statutory jurisdiction, authority or limitations, or short of statutory right." Or "without observance of pro-

cedure required by law." *5 U.S.C. § 706(2)(A), (C), (D)*. *Holly Hill Farm Corpora-*

*tion v. United States of America*. 447 F.3d 258, 262 (4th Cir. 2006).

## VIII. ARGUMENT

A. When the United States Department of Agriculture made wetland determinations in 2005, 2008, and 2010 for Basses did that invalidate its wetland determination made in 1994?

The Food Security Act of 1985, Public Law 99-198, Title XII (Food Security Act), introduced wetland conservation guidelines into federal farm policy. The Food Security Act, following the date of its enactment (December 23, 1985), made any person producing an agricultural commodity in any crop year on converted wetland ineligible for many United States Department of Agriculture (USDA) benefits. *16 U.S.C. §§ 3821(a)–(b)*. If the wetland was converted prior to December 23, 1985, the farmer remained eligible for benefits. *16 U.S.C. §3822(b)(1)(A)*. In 1990, Congress expanded the Food Security Act to make a person ineligible for benefits if the conversion makes the production of an agricultural commodity possible, whether such production actually occurs or not. *16 U.S.C. § 3821(c)*.

*Wetland,* for purposes of the Food Security Act, is land that has a predominance of hydric soils that are inundated or saturated by surface or

groundwater at a frequency and duration sufficient to support, and that under normal circumstances does support, a prevalence of hydrophytic vegetation typically adapted for life in saturated soil conditions. *16 U.S.C. § 3801(a)(27)*. *Converted wetland* is a wetland that has been drained, dredged, filled, leveled, or otherwise manipulated (including any activity that results in impairing or reducing the flow, circulation or reach of water) for the purpose of or having the effect of making the production of an agricultural commodity possible. *16 U.S.C. §3801(a)(7)(A)*.

Congress designated the Secretary of USDA to delineate, determine, and certify wetlands located on a farm. *16 U.S.C. §3822(a)(1)*. USDA has designated the Natural Resources Conservation Service (NRCS) as the Agency to make wetland determinations, delineations, and certifications on behalf of the Secretary. *7 C.F.R. 12.30(a)(3)*. A final certification of a wetland determination made by USDA remains valid and in effect as long as the area is devoted to an agricultural use or until such time as the person affected by the certification requests review of the certification. *16 U.S.C. §3822(a)(4)*. The NAD hearing officer's appeal determination, which is the final agency action being appealed, held that the 1994 Determination was a certified wetland determination for Tract 8355 and that because the 1994 wetland determination was certified when Basses appealed NRCS's 2010 wetland determination to NAD the appeal was limited to

whether a conversion of a wetland occurred. *J.A. 26*. She rejected their argument that they could challenge, when appealing the 2010 determination, NRCS's 1994 Determination that tract 8355 had a wetland.

In 2004, Joe Bass requested a review of NRCS's 1994 Determination, asking for a new wetland determination. *J.A. 103*. The NRCS granted his request for review and made a new wetland determination, 2005 Determination, based upon an on-site review, which determined that Tract 8355 contained 97 acres of prior converted wetlands (PC), 16 acres of non-wetlands (NW), and 28 acres of wetlands. *J.A. 109*. The 2005 determination would not have been issued unless the Plaintiffs had requested a review because NRCS has no authority to make a new determination until the person affected by the existing wetland determination requests a review. *16 U.S.C. §3822(a)(6)*. "The delineation shall not be subject to a subsequent wetland certification or delineation by the Secretary, unless requested by the person under paragraph (4)." The 2005 determination was made on the authority of Joe Bass's request for a review of the 1994 Determination and once the request for the review was made the prior determination was no longer valid and in effect.

The NAD Appeal Determination cites *7 C.F.R. 12.30(c)(4)* to limit Basses' appeal of the 2010 determination to the question of whether a conversion occurred because the hearing officer concluded that the 1994 Determination was a certified

wetland determination that was still valid and in effect. *J.A. 26.* The error in this conclusion is that Joe Bass's request for a review of the 1994 Determination made the 1994 Determination no longer valid and in effect, so no longer a prior certified wetland determination. The statutory language is clear and Congress has spoken directly on the precise issue; a final certification of a wetland is valid and in effect until a review of the certification by the Secretary is requested. The result that flows is that once Joe Bass made his request for review the 1994 Determination was no longer valid and in effect and USDA did not follow the law when it held to the contrary. It was an error of law for the hearing officer to conclude that the 1994 Determination was still a certified wetland determination when Basses appealed the 2010 Wetland Determination.

The district court upheld USDA's action because "there was at least one valid prior certified wetland determination in existence at the time of the plaintiffs' [Basses] conversion of Field UN2 … [so] the review of the agency's 2010 determination that conversion occurred is properly limited to that question of conversion on appeal before the agency, and thus to this court as well." Citing *7 C.F.R. §12.30(c)(4). J.A. 62, at page 13*. The mistake by the court is that, as stated above, the 1994 Determination was no longer valid and in effect after Joe Bass requested a review of it in 2004 and the 2005 Determination notice was defective because the notification of the determination lacked the proper appeal procedure.

That the notice lacked the proper appeal procedure is a fact and it is a reasonable inference from this fact that if Joe Bass had been given the proper notice of his right to appeal to NAD he would have appealed. Because this appeal is from a ruling on a summary judgment requested by USDA the facts and the inferences drawn therefrom are to be viewed most favorable for Basses. NRCS withdrew its 2008 Determination, *J.A. 205 and 206,* and the 2008 Determination Two was not permitted because no request for review was made by Basses of the 2005 Determination or the 2008 Determination. USDA cannot make a subsequent wetland determination unless requested by the person adversely affected by the previous wetland determination. *16 U.S.C. 3822(a)(6).* This leaves no wetland determination in effect at the time Basses appealed the 2010 Determination except the 2010 Determination. Because there was no prior determination in effect when NRCS made its on-site investigation of a potential wetland violation and made its 2010 Determination, *7 C.F.R. §12.30(c)(4)*'s limitation, on appeal, of only the question of whether a conversion occurred does not apply. The hearing officer's ruling to the contrary is an error of law.

The district court's conclusion that some valid prior certified wetland determination was in existence when the conversion occurred is not supported by the facts or the law, as set out above. Also the district court exceeded its standard of review when it changed USDA's action, finding, and conclusion to support its

21

ultimate decision that a conversion occurred. The district court based this change on its finding that no clear error of judgment by USDA occurred. However, review on this question of law is not discretionary and, thus, the no clear error of judgment standard does not apply. There is no deference due the agency when the statute is clear and precise and speaks directly on the issue involved. The correct standard of review was for the district court to hold that USDA's action was contrary to the law and should be held unlawful and be set aside; not apply the deference standard of no clear error.

A proper application of the law also takes into account USDA's regulation at *7 C.F.R. §12.30(c)(6)*. This regulation allows a review request for certifications when the "NRCS concurs with an affected person that an error exists in the current wetland determination." *7 C.F.R. §12.30(c)(6)*. The only reasonable inference from the events surrounding Tract 8355 in 2005 is that the NRCS, by doing a full review and significantly decreasing the amount of acres of wetlands (38 acres to 25 acres), concurred with Joe Bass that an error did indeed exist in the 1994 Determination. Because of that concurrence, and because of Mr. Bass's request for a review, the certification of the 1994 determination should not be considered valid and in effect based on the Statute and on USDA's regulation. *16 U.S.C. §3822(a)(4)*, *7 C.F.R. §12.30(c)(6)*.

By binding Basses to the 1994 determination, USDA limited their appeal to only the question of whether the land was a converted wetland or not. But Basses should rightfully be able to appeal the determination of whether the land should have been considered a wetland in the first place. NRCS has made five different decisions about how much of Tract 8355 is a wetland for purposes of the Food Security Act; 1994 Determination, 2008 Determination, 2008 Determination Two, and its 2010 Determination. Certainly Basses should have an opportunity to question NRCS's evidence and procedures in an adjudicatory environment; the NAD hearing. They should not be denied this opportunity based on an misapplication of the law. This court should hold that the agency's action is unlawful and must be set aside because it is not in accordance with the law, is short of statutory authority and limitations, and is without observance of the procedure required by law.

      B. When the United States Department of Agriculture determined that Basses had converted a wetland in violation of *16 U.S.C. §3821 (a)* was it required to determine whether the conversion had only a minimal effect on the wetland functions and values in the area or only on Basses' land?

Congress directed that USDA exempt a person from becoming ineligible for participation in federal farm program benefits for the conversion of a wetland if the

action of the person, individually and in connection with all other similar actions authorized by the Secretary in the area, has a minimal effect on the functional hydrological and biological value of the wetlands in the area, including the value to water fowl and wildlife. *16 U.S.C. §3822(f)(1)*. As a result of this congressional mandate, NRCS made a routine minimal effect procedure and determined Basses were not entitled to a minimal effect determination. *J.A. 168-172.* The denial was based on what the procedure refers to as "Yellow Flag Conditions." *J.A. 171.* The yellow flag conditions noted by NRCS are that the appellant's manipulation converted more than .33 acres of wetlands, the wetland converted contained more than three co-dominant tree species, and spring and contiguous wetland will be impacted by the manipulation. *J.A. 170.* On this last point the form has written on it "Groundwater discharge apparent on gentle slope." *Id.* These yellow flag conditions all relate to the geographic boundaries of Tract 8355. In doing its wetland functional assessment NRCS did not determine what the wetland functions in the area were. *J.A. 202, DESCRIPTION OF WETLAND FUNCTIONS at top part of form is left blank.* There is nothing in the assessment about the wetland values in the area including the value to water fowl and wildlife. There also is nothing about what actions similar to those done by the Basses have been authorized by USDA in the area or what effect such similar action in connection with Basses action would have on the biological wetland functions and values in

24

the area. This means NRCS's minimal effect determination on the Basses' conversion activities on Tract 8355 is contrary to the law and should be set aside.

NRCS's minimal effect procedure used on Tract 8355 only looked at the wetland converted on Tract 8355. Congress certainly meant for NRCS to do more when the law says NRCS is to look at the effect of a conversion activity on the wetland functions and values in the area and in doing so take into consideration all other similar actions authorized by NRCS in the area. If the law meant that NRCS should only look at the wetland that was converted the word "area" would not be included in the statute. The law must be interpreted to mean something other than the wetland converted when it uses the words "in the area" in two difference places.

The wording in USDA's regulation is almost the same as the statute. "NRCS has determined that the actions of the person with respect to the conversion of the wetland or the combined effect of the production of an agricultural commodity on a wetland converted by the person or by someone else, individually and in connection with all other similar actions authorized by NRCS in the area, would have only a minimal effect on the wetland functions and values of wetlands in the area". *7 C.F.R. 12.5(b)(v).* From both the wording of the statute and the regulation it is clear that NRCS is to look at the effect of a conversion on the wetland functions and values in the area, not just on the converted wetland. In determining

Basses' eligibility for a minimal effect determination NRCS looked only at the converted wetland, not the area. It also did not identify what the biological wetland functions and values are in the area. So the deny of a minimal effect exemption to the Basses was not done in accordance with the law, denied them their statutory right and was done without observance of the procedure required by the law.

NAD, in an appeal determination issued in another case, has agreed with Basses' position on this issue. *See NAD Appeal Determination* attached to this brief. NAD determined that NRCS did not consider the impact on other wetlands in the area, only on the one-acre wetland and that it did not base its decision on the required functional assessment of other or even one related wetland in the area. As a result NAD found NRCS's minimal effect assessment to be in error. The decision of NAD becomes USDA's final action, reviewable and enforceable by United States district court of competent jurisdiction and is binding on all USDA matters. *6 U.S.C. §§6997 and 6999.*

The district court, in ruling on appellant's minimal effect claim, ruled that Basses never requested from NRCS a minimal effect determination or pursued their claim at the NAD hearing. It ruled that because of this Basses failed to exhaust their administrative remedies and the court lacked subject matter jurisdiction of this minimal effect issue. Not only did Basses request a minimal effect determination but NRCS did conduct a minimal effect determination. This

26

determination was in the agency record and available to the NAD hearing officer at the time of the hearing. It was also in the record before the district court. *J.A. 168-172.* NAD's appeal determination is to be based on the record. *7 C.F.R. 11.10(c).* The district court's decision is based on the same record. The record does contain a minimal effect determination and denial, which denial is contrary to the law. Because this error was evident from the record exhaustion of remedies does not apply.

This court pointed out in *Holly Hill Farm Corporation v. United States of America,* 447 F.3rd 258, 267 (4th Cir. 2006) that there are exceptions to issue preclusion. One of these is when refusal to consider a newly-raised issue would be plain error or would result in a fundamental miscarriage of justice, citing *Muth v. United States*, 1 F. 3d 246, 250 (4th Cir. 1993). In *Steward v. Hall*, 770 F.2d 1267 (4th Cir. 1985) the court was addressing an appeal of a malpractice trial. On appeal the defendant raised the issue that the malpractice theory applied at the trial was improper. This had not been presented at the time of the trial. This court, however, considered this issue because "..there was a complete failure of proof with respect to the essential element of causation. Moreover, the omission of the ordinary scheme of proof for an essential element of the cause of action is fundamental error undermining the integrity of the trial." This court also applied an exception to the no new issues on appeal in *Maynard v. General Electric Company*, 486 F.2d

27

538 (4th Cir. 1973). *Maynard* was an appeal of an adverse decision to a plaintiff in a summary judgment. The adverse decision was based on no privity of contract. On Appeal the court noted that the theory of privity had not been specifically argued to the district court. However the circuit court considered the privity theory because "any theory "plainly encompassed by the pleadings and ... clearly a `discernible circumstance' from the record before the court" should be considered on appeal. *Semaan v. Mumford*, 118 U.S.App.D.C. 282, 335 F.2d 704, 706, n. 7 (1964). We further note that "it is proper for this court to affirm a summary judgment on any ground that appears from the record, whether or not the trial court relied on it." *Helena Rubinstein, Inc. v. Bau*, 433 F.2d 1021, 1023 (9 Cir. 1970)." *Id*. at 539. In Basses' matter the minimal effect determination was in the record and the determination clearly showed that NRCS had only looked at the wetland on Tract 8355, not at the wetland in the area, and they NRCS did not identify the wetland functions and values in the area. Consistent with *Steward* and *Maynard* this court should consider Basses claim that the minimal effect determination done was contrary to the law and should be set aside.

This court had a similar issue on minimal effect before it in *Holly Hill Farm Corporation v. United States of America*, 447 F.3d 258 (4th Cir. 2006). In the *Holly Hill* case this court concluded that the minimal effect issue was first raised on appeal to the Fourth Circuit and the court declined to entertain it. *Id. at 268*. Basses

case is different from *Holly Hill* in two ways. Holly Hill presented no evidence that NRCS had done a minimal effect determination. What it did present to the Court of Appeals was evidence it had presented at the NAD hearing in support of its contention that it did not convert a wetland rather than that it did convert a wetland but that the effect was minimal. The issue them became whether NRCS's failure to do a minimal effect determination and Holly Hill first raising this issue on appeal to the Circuit Court meet an exception to the general rule that the court will no consider issues raised for the first time on appeal. This court concluded it did not because there was nothing in the record to support Holly Hill's contention that the minimal effect issue was before NAD or the district court.

The second difference is that Holly Hill argued it was entitled to a minimal effect exemption as a matter of law. This court ruled that, because there was no indication in the record that NRCS had addressed the minimal effect exemption, it could not grant Holly Hill the minimal effect exemption without some additional fact finding. Basses in this case are not asking the court to rule that they are entitled to the exemption as a matter of law. Their argument is that the minimal effect determination that was done was not done following a procedure that meets the requirements of the statute or of the regulations. Their request is that NRCS's action be declared unlawful and set aside because it did not meet the law and that this court remand the matter to NRCS to make a minimal effect determination that

does meet the law. Thus this court is asked to rule that Basses did exhaust their administrative remedies as to the minimal effects issue because a minimal effect determination was done, it is in the record, and it clearly shows on its face that it is contrary to the law.

## IX. CONCLUSION

The action of USDA, carried out by its agency NRCS, was not according to law, denied Basses their statutory right and was not according to the procedure required by the law. As a result Basses ask the court to hold that USDA's final administrative action, that Basses converted 13.5 acres of wetland on Tract 8355 and are ineligible for benefits, is unlawful, setting it aside, and remanding the matter to USDA to complete an action concerning Tract 8355 that is according to the law, that gives Basses their statutory rights and is according to the procedures required by the law.

/S/_____

Thomas A. Lawler
Lawler & Swanson, P.L.C.
601 Coates Street, PO Box 280
Parkersburg, IA 50665-0280
Telephone (319) 346-2650
lawlerandswanson@iabar.org

30

## X.  CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,272 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 with 14 characters per inch and Times New Roman type style.


February 18, 2014

/S/_____
Thomas A. Lawler
 Attorney for Steve Bass and Terry H. Bass

# I.   CERTIFICATE OF FILING AND SERVICE

I HEREBY CERTIFY that on this 18 day of February, 2014, the required copies of the foregoing Opening Brief of Appellant was filed with the Clerk, United States Court of Appeals for the Fourth Circuit via hand delivery and electronically using the Court's CM/ECF system which will send notification of such filing to:

       Matthew Fesak
       OFFICE OF THE UNITED STATES ATTORNEY
       Suite 800, Federal Building
       310 New Bern Avenue
       Raleigh, NC 27601-1461
       (864) 282-2100
       matthew.fesak@usdoj.gov

       *Counsel for Appellee*

                          /S/_____
                          Thomas A. Lawler
                          Lawler & Swanson, P.L.C.
                          601 Coates Street, PO Box 280
                          Parkersburg, IA  50665-0280
                          Telephone (319) 346-2650
                          lawlerandswanson@iabar.org

# XI.  ADDENDUM

NAD Appeal Determination on Minimal Effects,
Case No. 2012E000627
Dated September 13, 2012

**UNITED STATES DEPARTMENT OF AGRICULTURE**
**OFFICE OF THE SECRETARY**
**NATIONAL APPEALS DIVISION**

| | | |
|---|---|---|
| In the matter of | ) | |
| | ) | |
| XXXXX | ) | |
| | ) | |
| and | ) | Case No. 2012E000627 |
| | ) | |
| NATURAL RESOURCES | ) | |
|   CONSERVATION SERVICE | ) | |
| | ) | |
| and | ) | |
| | ) | |
| XXXXX | ) | |
| THIRD PARTY | ) | |

---

## APPEAL DETERMINATION

XXXXX (Appellant) filed an appeal challenging a Natural Resources Conservation Service (Agency) adverse decision dated April 30, 2012. In its decision, Agency denied Appellant's request for a "Minimal Effect Exemption" (exemption) that would permit installing pattern drain tiling on a one acre wetland on Farm # 5491, Tract 8799. Agency argues Appellant's planned installation of tiling would remove the wetland hydrology from the wetland and is therefore not eligible for an exemption. Agency contends it performed all required assessments and inspections in making its decision. Agency also contends that Section 1619 of the Food Conservation and Energy Act of 2008 causes a conflict in its completing functional wetland assessments because as part of the appeal process it could be required to release the location, wetland label, and other wetland information Agency gathered.

Appellant argues Agency's decision is wrong because it failed to conduct a required functional assessment considering the functions, impact and overall importance of other wetlands in the area compared to the impact of Appellant's one-acre wetland. Appellant further argues that Agency did not base its decision in conjunction with an on-site inspection at the time of the exemption request. Appellant contends Agency relied on information gathered while completing a wetland determination one year prior. Appellant asserts that the conditions of the wetland with respect to the vegetative cover changed from the time Agency made its wetland determination to the time it requested the exemption. Appellant asserts the changes from the time of the wetland determination until the exemption request impacts the data reported on functional assessment worksheets, and the final assessment results. Appellant also contends that the one-acre wetland

is a depressional wetland and not a slope wetland as determined by the Agency which also impacts functional assessment calculations.

At the Appellant's request, I held an in-person hearing on July 30, 2012. I closed the record on August 15, 2012, allowing time for receipt of the transcript of the hearing, and allowing Appellant and Agency to submit additional documentation, and rebuttal. I have reviewed the hearing transcript, and have determined it is an adequate record of the proceedings. Therefore, the transcript will be the official record of the hearing. Both the Appellant and Agency submitted additional documentation and rebuttal for me to consider in my determination. Based on the evidence, the arguments submitted by the parties, and the program regulations that apply to this situation, I conclude that the Agency decision is in error. The rationale for my decision follows.


**STATEMENT OF THE ISSUES**

I had to determine whether Agency correctly applied its regulations when it denied Appellant's request for an exemption on Farm # 5491, Tract 8799. To make this determination, I had to resolve the following questions:

1. Did Agency consider the impact of Appellant' proposed tiling of the one-acre wetland on other wetlands in the area?

2. Did Agency conduct an on-site inspection of Appellant's one-acre wetland at the time of its functional analysis?

3. Does Agency's argument that the appeal process could cause it to release information protected under Section 1619 of the Food Conservation and Energy Act of 2008 provide a basis for not completing the functional assessment in the manner set forth in regulations?


**FINDINGS OF FACT (FOF)**

1. On June 2, 2011, Agency conducted an on-site inspection of Farm # 5491, Tract 8799. On August 1, 2011, Agency issued its Final Technical Determination that Field un1 on Farm # 5491, Tract 8799 contains one acre of wetland. *[Agency Record, Pages 29-43]*

2. On February 21, 2012, Appellant filed a "Highly Erodible Land Conservation (HELC) and Wetland Conservation Certification" (AD-1026) proposing to install tiling in the designated wetland area. On February 29, 2012, Appellant thorough its attorney requested that Agency also complete a minimal effect exemption determination in conjunction with the AD-1026 request. *[Agency Record, Pages 25-26]*

3. On April 25, 2012, Agency completed its "Interim Slope Wetland Functional Assessment Model Worksheets." *[Agency Record, Pages 6-19]*

4. Farm # 5491, Tract 8799, is located in the XXXXX Watershed. XXXXX Watershed encompasses approximately 540 square miles of drainage area. *[Appellant Exhibit A, Page 1; Official Record, Pages 44, 53 & 72*

5. Agency did not do a functional analysis of other wetlands in the area based on its interpretation of the governing regulations. *[Official Record, Pages 50 & 60-61]*

6. Agency has issued no categorical minimal effect exemptions in the area. *[Official Record, Page 61]*

7. Agency did not conduct an on-site inspection as part of its functional analysis, but relied on data gathered in June 2011, as part of a wetland determination. Appellant is cropping the wetland area which was formerly pasture ground. *[Official Record, Pages 26, 27, 45, 55, 56 & 57]*

**DISCUSSION**

Part 11 of Title 7 of the Code of Federal Regulations (7 C.F.R.) governs the appeal. Seven C.F.R. Part 12 governs the issues on appeal and is supplemented by the NRCS National Food Security Act Manual (NFSAM).

Agency did not consider the impact of Appellant' proposed tiling of the one-acre wetland on other wetlands in the area. NRCS shall determine whether the effect of any action of a person associated with the conversion of a wetland, the conversion of wetland and the production of an agricultural commodity on converted wetland, or the combined effect of the production of an agricultural commodity on a wetland converted by someone else has a minimal effect on the functions and values of wetlands in the area. Such determination shall be based upon a functional assessment of functions and values of the wetland under consideration and other related wetlands in the area. *See* 7 C.F.R. § 12.31(d). Agency did not perform the required assessment of other wetlands in the area, nor has Agency identified any categorical exemptions for any area of the state (FOF's 5 & 6). In support of its interpretation of the regulation, Agency stated, "You can say without a lot of thought that if all producers within the watershed were allowed to pattern tile their sloped wetlands, it would not be a minimal effect" (FOF 5). Agency also stated, "We considered what effect it would have if we allowed other producers in the area to do the similar action" (FOF 5). Agency provided no evidence that all producers within the watershed have requested exemptions, or that Agency has approved any exemptions. The regulation is framed in mandatory terms. Generally, National Appeals Division will defer to an agency's reasonable interpretation of its applicable regulations. However, deference cannot be given for failure to comply with mandatory actions. Agency did not base its decision on the required functional assessment of other or even one, related wetland in the area. I find Agency's decision is not in accordance with governing regulations, and therefore, erroneous.

Agency did not conduct an on-site inspection of Appellant's one-acre wetland at the time of its functional analysis. Such determination shall be based upon a functional assessment of functions and values of the wetland under consideration and other related wetlands in the area, and will be

made through an on-site evaluation.  *See* 7 C.F.R. § 12.31(d).  The functional assessment component of the evaluation will be based on site conditions and must be documented using approved functional assessment worksheets.  The USDA participant must provide NRCS with the following information before the required site visit: (i) Description of the proposed activity. (ii) Location of the proposed activity. (iii) Any existing restrictions on the property in question, such as easements or permit conditions.  *See* NFSAM, Part 515.1(B).  The use of the words shall, will be made through an on-site evaluation, and required site visit, found in the regulations and NFSAM are framed in mandatory terms.  Agency supported its use of the information gathered during the wetland determination rather than a site visit by stating, "I think as you actually look back to what NFSAM says, it talks about on-site conditions.  It does not necessarily mean that the person doing the evaluation has to have been on-site."  Additionally, Agency stated "It does not specifically say the person doing the evaluation has to be on-site." Finally, Agency stated, "So the on-site conditions at the time we were there to assess whether it's a wetland or not, are the conditions you're going to base the assessment on."  Appellant had not requested the exemption at the time Agency conducted its on-site wetland determination, thus Agency was not conducting the required functional analysis when it conducted the wetland determination (FOF 1 & 2). Agency' failure to base its exemption determination on actual site conditions failed to account for the changes in the way the wetland area was being managed (cropped instead of pasture) (FOF 7).  I find Agency's use of information gathered during the wetland determination to complete the functional analysis is not in accordance with governing regulations, and therefore, erroneous.

Agency's argument that the appeal process could cause it release information protected under Section 1619 of the Food Conservation and Energy Act of 2008 does not provide a basis for not completing the functional assessment in the manner set forth in regulations.  Agency has not approved any categorical minimal effect exemptions, nor did it complete a functional analysis of the wetlands in the area which would give cause to releasing restricted information.  I do not find anything in the regulations that permits noncompliance by the Agency based on its concern for the possible release of protected information.

**DETERMINATION**

Seven C.F.R. § 11.8(e) provides that an appellant bears the burden of proving that an agency's adverse decision is erroneous by a preponderance of the evidence.  In this case, Appellant did meet this burden. The Agency decision is erroneous.

This is a final determination of the Department of Agriculture unless a timely request for review is filed.

Dated and mailed this 13th day of September 2012.


/s/

James R. Holman
Hearing Officer


Attachments:
Notice of Right to Request Director Review and/or Copy of Audio Recording
Request for Director Review